# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS A. GLADU, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | 2:17-cv-00504-JAW |
| CORRECT CARE SOLUTIONS, et al., | ) ) ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON PLAINTIFF'S MOTIONS FOR PHYSICAL EXAMINATION

In this action, Plaintiff, an inmate at the Maine State Prison, alleges, pursuant to 42 U.S.C. § 1983, that Defendants have acted, and continue to act, with deliberate indifference toward his serious medical condition. The matter is before the Court on Plaintiff's motions for a physical examination (ECF Nos. 19, 46), which motions are construed requests for preliminary injunctive relief.

## Background

Plaintiff alleges that he has developed a condition on his skull, which condition he describes as an anomaly, and that he has experienced headaches, vertigo, and visual difficulties. Plaintiff contends Defendants have denied Plaintiff's request for a referral to outside providers and have not properly assessed Plaintiff to rule out certain disease processes.

Through his motions for physical examination, Plaintiff requests x-ray studies of his skull, a metabolic panel, renal function panel, endocrine study, and other studies. Plaintiff

asserts that he is willing to pay for the studies, if they are obtained from outside providers. Plaintiff requests, in the alternative, that Defendants conduct the studies, provided that Plaintiff set parameters for the studies and that the x-rays are reviewed by an outside provider. (See, ECF Nos. 19, 32, 46.)

As referenced above, because Plaintiff asks to the Court to direct a certain aspect of Plaintiff's medical treatment, Plaintiff's motions for physical examination are construed as motions for injunctive relief.

**Discussion**

When evaluating a request for injunctive relief, courts "must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."[1] *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir. 1996) (citing *Weaver v. Henderson,* 984 F.2d 11, 12 &n.3 (1st Cir. 1993), and *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir. 1991)). "The sine qua non of this four-part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing

---

[1] Plaintiff must prove that "the public interest will not be adversely affected by the granting of the injunction." *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981).

2

actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969).

Plaintiff's claim arises under the Eighth Amendment, made actionable by the civil rights act, 42 U.S.C. § 1983. In its final clause, the Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Based on this prohibition, "courts have derived the principles that govern the permissible conditions under which prisoners are held and that establish the medical treatment those prisoners must be afforded." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To succeed on a claim of inadequate or delayed medical care, Plaintiff must demonstrate that Defendants have acted with "deliberate indifference" toward "a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical need[]," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 –106 (1976)). To carry his burden, Plaintiff must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).

The objective standard focuses on the seriousness of the risk of harm to the inmate's health. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is serious if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention.

*Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The subjective standard involves the culpability of the defendant. To establish liability, a plaintiff must establish that a defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002). In other words, the subjective standard focuses on whether the Defendants had a "purposeful intent" to neglect Plaintiff's serious medical needs. *Perry v. Roy*, 782 F.3d 73, 79 (1st Cir. 2015) (citing *Estelle,* 429 U.S. at 105). A showing of such an intent requires evidence that the alleged absence or inadequacy of treatment was intentional. *Id.* (citing *Estelle*, 429 U.S. at 105 (holding that "an inadvertent failure to provide adequate medical care" is not a constitutional violation), and *Watson,* 984 F.2d at 540 ("The courts have consistently refused ... to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.")). "The typical example of a case of deliberative indifference would be one in which treatment is denied in order to punish the inmate." *Id.* (internal quotation marks omitted).

Deliberate indifference thus must be based on much more than ordinary negligence. The First Circuit has explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*, 429 U.S. at 106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

The Court considered a similar motion by Plaintiff in the matter of *Gladu v. Correct Care Solutions*, *et al.*, No. 2:15-cv-00384-JAW. In that action, Plaintiff alleged that the defendants acted with deliberate indifference to his medical needs, and, by motion, asked the Court to direct the defendants to provide certain treatment and to refer Plaintiff to an outside specialist. In particular, Plaintiff sought treatment for "a 'skull anomaly' that could suggest a 'skull base tumor.'" (May 31, 2017, Recommended Decision, ECF No. 405 at 3.) Upon review of the record in the prior action, I wrote:

> The record establishes that as recently as April 22, 2017, after examining Plaintiff in the emergency department at Maine Medical Center, which examination included a neurological exam and an assessment of Plaintiff's complaint about his skull, a physician determined that Plaintiff did not suffer from a serious head-related condition and that no imaging of Plaintiff's head was necessary.

5

(*Id.* at 4 – 5, citing ECF No. 388-1.) Given the record evidence, I recommended the Court deny Plaintiff's request for injunctive relief.[2] The Court, on June 23, 2017, adopted the recommendation and denied Plaintiff's request. (Order Affirming Recommended Decision, ECF No. 415.) On December 29, 2017, Plaintiff filed this action.

The record evidence in this case reveals that Plaintiff's complaint is part of a continuing disagreement between Plaintiff and Defendants regarding Plaintiff's medical treatment, including the assessment of the "skull anomaly" that was the subject of a request for injunctive relief in the prior action. The record evidence, including the medical records included as exhibits to Plaintiff's motions, does not support a finding that Plaintiff is likely to prevail on his deliberate indifference claim. In fact, Plaintiff has failed to present sufficient evidence to support a negligence finding.[3] A review of the record reveals a

---

[2] The Court granted summary judgment to the defendants in the prior action, finding that the record did not support Plaintiff's allegations of deliberate indifference toward the treatment of a hip condition, diagnosed by an outside provider as bilateral trochanteric bursitis, but perceived by Plaintiff to be a symptom of non-Hodgkin lymphoma, chronic eosinophilic leukemia, myeloproliferative disorders, autoimmune disease or systemic infection. (Recommended Decision at 17 – 18, ECF No. 512; Order Adopting Report and Recommended Decision, ECF No. 541.) In that action, Plaintiff sought an order for an examination to secure a medical professional to support his claim, citing Federal Rule of Civil Procedure 35. The Court explained to Plaintiff that a request designed to obtain treatment or to assist Plaintiff in his attempt to establish deliberate indifference is not within the scope of Rule 35. *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997); *Ashford v. Gordon*, No. 0:13-cv-1113, 2013 WL 5495280, at *1 (D.S.C. Oct. 2, 2013); *Savajian v. Milyard*, No. 1:09-cv-354, 2009 WL 5126581, at *1 (D. Colo. Dec. 17, 2009), *aff'd,* 2010 WL 728219, at *7 (D. Colo. Feb. 25, 2010); *Kendrick v. Frank*, No. 2:05-cv-976, 2007 WL 2207907, at *2 (E.D. Wis. July 30, 2007). (Order Denying Motion for Physical and Mental Examination, ECF No. 218.)

[3] Plaintiff also moved to admit portions of certain medical treatises. (ECF No. 23.) Plaintiff evidently contends the Court can take judicial notice of the treatises and the information in the treatises. As the Court explained in Plaintiff's prior action, the medical issues relevant to Plaintiff's diagnose and treatment are the subject of medical opinion and do not constitute facts that are "not subject to reasonable dispute as contemplated" by Federal Rule of Evidence 201, which governs judicial notice. *Gladu v. Correct Care Solutions, et al.*, No. 2:15-cv-00384-JAW at 1. Furthermore, medical treatises cannot substitute for expert testimony. *See e.g., Hall v. Johnson & Johnson*, 2006 WL 1096940 *4 (D. New Jersey, April 25, 2006). Because the case involves an issue of medical opinion, Plaintiff, could not rely solely on medical treatises to demonstrate that he is likely to prevail on his claim that Defendants have not provided appropriate care

6

difference of opinion between Plaintiff and Defendants regarding Plaintiff's diagnosis and treatment. The difference of opinion does not constitute evidence of deliberate indifference.

Because Plaintiff has not demonstrated that he is likely to prevail on his claim, Plaintiff is not entitled to the injunctive relief he requests. That is, because Plaintiff has not established the "sine qua non" of the proof necessary for preliminary injunctive relief, Plaintiff's request for the Court to intervene in his medical care must fail. *New Comm Wireless Servs., Inc.*, 287 F.3d at 9 (1st Cir. 2002). The denial of the motions is also consistent with the view that "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982).

## Conclusion

Based on the foregoing analysis, I deny Plaintiff's Motion to Admit Treatises (ECF No. 23) and Motion for Expedited Ruling. (ECF No. 30.) I also recommend the Court deny Plaintiff's Motions for Physical Examination. (ECF Nos. 19, 46.)

## NOTICE

Any objections to an order granting or denying a motion shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. Section 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within

---

even if the Court were to admit the treatises. I will thus deny Plaintiff's motion to admit the treatises (ECF No. 23), and Plaintiff's related motion for expedited ruling on the motion to admit. (Motion, ECF No. 30.)

fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 26th day of June, 2018.