UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS A. GLADU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17-cv-00504-JAW |
| | ) | |
| CORRECT CARE SOLUTIONS, et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON MOTION TO AMEND AND
RECOMMENDED DECISION ON MOTION TO DISMISS**

In this action, Plaintiff, an inmate at the Maine State Prison, alleges Defendants, who are medical providers at the prison, have demonstrated deliberate indifference toward his serious medical needs.

The matter is before the Court on Defendants' Motion to Dismiss (ECF No. 40), Defendants' Motion to Stay in the Alternative (ECF No. 67/71), and Plaintiff's Motion to Amend (ECF No. 62). Through their motion, Defendants request dismissal of Plaintiff's action based on the doctrine of res judicata given the Court's recent judgment in the matter of *Gladu v. Correct Care Solutions*, No. 2:15-cv-384-JAW (the prior action), or, in the alternative, based on Plaintiff's failure to state an actionable claim.[1] Through his motion to amend, Plaintiff seeks to supplement his complaint to reference some of his most recent interactions with Defendants.

---

[1] Defendants also argue that if the Court concludes that res judicata does not bar Plaintiff's claim because Plaintiff has appealed from the Court's judgment in the prior action, the Court should stay further proceedings in this matter until the First Circuit has ruled on the appeal.

Following a review of the relevant pleadings, and after consideration of the parties' arguments, I grant the motion to amend, and recommend the Court grant the motion to dismiss.

**Background**

**A. The Prior Action**

On September 23, 2015, in the prior action, Plaintiff joined as defendants Correct Care Solutions and several other medical providers at the prison. In his original complaint, Plaintiff alleged the defendants did not treat appropriately Plaintiff's symptoms of hip pain. In an amended complaint filed on December 5, 2016, Plaintiff described a history of chronic pain in the hip region and his inability to obtain relief despite numerous palliative approaches taken by staff of Defendant Correct Care Solutions.

In January, 2017, the defendants filed motions for summary judgment in which they set forth Plaintiff's course of treatment, and argued the record would not support a finding that Plaintiff's care violated the Eighth Amendment's Due Process Clause. (ECF Nos. 261, 266.) Plaintiff subsequently filed a motion to compel imaging studies and reports and a motion for injunctive relief, among other motions. (ECF No. 370, 371.) In an affidavit in support of his motions, Plaintiff described a skull anomaly, and argued that all of his various symptoms (including but not limited to his hip condition) were evidence of a serious underlying disease process that the defendants refused to acknowledge. (ECF No. 370-1.) As noted in the recommended decision on Plaintiff's motion for injunctive relief in which Plaintiff asked the Court to order the defendants to provide appropriate care for various medical conditions, the Court addressed Plaintiff's claim regarding the alleged skull anomaly: "The record establishes that as recently as April 22, 2017, after examining Plaintiff in the emergency department at Maine Medical Center, which examination included a neurological exam and an assessment

of Plaintiff's complaint about his skull, a physician determined that Plaintiff did not suffer from a serious head-related condition and that no imaging of Plaintiff's head was necessary. Given this record, Plaintiff has not established he is likely to prevail on his deliberate indifference claim against Defendants." (ECF No. 405, Recommended Decision on Motion for Temporary Restraining Order and Preliminary Injunction at 4 – 5.)

On December 18, 2017, I issued a recommended decision on the Motions for Summary Judgment. (ECF No. 512.) In the recitation of the material facts, I summarized some of Plaintiff's assertions as follows:

> Citing some of the medical records, Plaintiff asserts that certain lymph node symptoms support the inference that his current symptoms are the product of the gradual progression of a serious underlying medical condition, such as non-Hodgkin lymphoma, chronic eosinophilic leukemia, myeloproliferative disorders, autoimmune disease or systemic infection. Based on his review of medical reference material such as Hematology in Clinical Practice (5th ed.) and Current Medical Diagnosis and Treatment (2015), Plaintiff believes that adequate care requires that CCS conduct differential diagnostic testing to rule out these diseases. Plaintiff contends that an MRI would also advance the differential diagnosis, and that an MRI is within the standard of care in accordance with Dr. Piers's recommendation. Plaintiff asserts that the CCS staff have little interest in his complaints regarding medical care, have treated him as a nuisance, and that the alleged deficiencies in his care are, in part, retaliatory.
>
> More recently, Plaintiff appears to advance a different explanation for some of his symptoms and a different possible diagnosis. Based on blood work panels reported in 2009, and a new declaration in which he provides a revised list of his symptoms, Plaintiff asserts that he believes he is suffering from Cushing Disease.

(Recommended Decision at 18.) After review of the summary judgment record, I recommended the Court grant the defendants' motions for summary judgment because the record failed to reveal (1) an objectively serious, undiagnosed medical condition that posed a serious risk of harm to Plaintiff's health or (2) deliberate indifference toward Plaintiff's medical needs. (*Id.* at 22 – 23.)

3

On February 14, 2018, the Court adopted the Recommended Decision. In its concluding summary, the Court made the following observation:

> In short, Mr. Gladu presents a case where the doctors, including the specialist, agree on his primary diagnosis, that is, bilateral trochanteric bursitis, and agree generally on the proper treatment. For his own reasons, Mr. Gladu simply disagrees with the medical professionals and worries that he has medical conditions no medical professional has diagnosed. Although he is focused on his perceived need for an MRI scan, there is no evidence in this record that Dr. Piers actually ordered an MRI scan, only that Dr. Piers suggested an MRI might be appropriate at some date in the future. In these circumstances, the evidence establishes that … the CCS medical professionals have been attentive to Mr. Gladu, have arrived at a diagnosis that has been confirmed by an outside specialist, and have generally agreed on the proper treatment. Mr. Gladu has failed on this record to demonstrate deliberate indifference on the part of CCS.

(Order Affirming the Recommended Decision of the Magistrate Judge at 14 – 15, ECF No. 541.)

### B. The Current Action

Plaintiff commenced the current action on December 29, 2017. (ECF No. 1.) In his original complaint, Plaintiff alleged that in April 2017, he developed a 3 to 4 inch long "fracture-like anomaly" in his skull, and that he thereafter experienced various symptoms, including vision problems, headaches, vertigo, facial tingling, hand tingling, shortness of breath, skull pain, and cognitive dysfunction. (*Id.* ¶¶ 10, 23, 29.) According to Plaintiff, Defendants did not believe Plaintiff's objective and subjective symptoms warranted treatment other than referral to the optometrist. (*Id.* ¶ 24.)

Plaintiff alleged that he submitted several sick call slips beginning in September, 2016, for a variety of symptoms that he believes are associated with "an underlying serious medical condition." (*Id.* ¶ 29.) According to Plaintiff, he developed a second skull anomaly in December 2017, which anomaly is apparent upon palpation of his skull. (*Id.* ¶ 37.) Based on

lab work showing a "decreased" alkaline phosphatase serum level and a low level of Vitamin D, Plaintiff opines that his symptoms demonstrate a likely metabolic bone disease. (*Id.* ¶¶ 36, 42, 43.)

On June 11, 2018, Plaintiff filed the pending Motion for Leave to File an Amended Complaint and Supplemental Complaint. (ECF No. 62.) Plaintiff asserts that after filing his complaint he "has identified additional facts in support of his claims" and "has suffered additional claims, which relate to the claims in the original complaint." (*Id.*) Specifically, Plaintiff alleged that between January 2017, and June 2018, he experienced "unexplained hypertension that is unresponsive to first-round treatment measures," and he noted that Defendants had prescribed Propranolol in January 2017. (*Id.* ¶ 57.) Plaintiff alleged that Defendants have not properly followed up on or monitored his condition. (*Id.* ¶ 58.) Plaintiff alleged onset of black spots in his peripheral vision since March 2018, and chest pain "since" May 2018, with pain radiating into his left arm. (*Id.* ¶¶ 59 – 60.)

## Discussion

### A. Plaintiff's Motion to Amend

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a litigant to amend a pleading "as a matter of course" subject to certain time constraints. When a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

Defendants argue the proposed amendment would be futile because the asserted claim is barred by the doctrine of res judicata. While Plaintiff's amended pleadings might be susceptible to dismissal for the reasons argued by Defendants in their motion to dismiss, the motion to amend is granted, and the motion to dismiss will be evaluated based on Plaintiff's amended complaint.[2] (ECF No. 62-1.)

**B. Defendants' Motion to Dismiss**

Defendants primarily argue that Plaintiff's claim is a barred by the doctrine of res judicata. (Motion to Dismiss at 4 – 13.) Alternatively, Defendants argue that Plaintiff has not alleged a plausible claim of deliberate indifference because the alleged claim reflects a mere disagreement about the proper course of treatment. (*Id.* at 14 – 18.)

"The rules for res judicata, where a federal court is considering the effect of its own prior disposition of a federal claim on a newly brought federal claim, are a matter of federal law." *AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1st Cir. 2005). "Federal claim preclusion law bars a plaintiff from litigating claims in a subsequent action that could have been, but were not, litigated in an earlier suit." *Silva v. City of New Bedford*, 660 F.3d 76, 78 (1st Cir. 2011).[3]

---

[2] Plaintiff's first amended complaint will supersede his original complaint. *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008).

[3] Claim preclusion is a modern term for what was traditionally described as the doctrine of "merger and bar."
> Traditional merger and bar doctrine prevents a party from asserting a claim previously decided on the merits by a final judgment in another case between the same parties (or their privies): the re-asserted claim is deemed "merged" into the prior judgment if the plaintiff had won or "barred" by it if the plaintiff had lost. *See* Restatement (Second) of Judgments § 18 & cmt. a (1982) (merger); id. § 19 (bar).

*AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1st Cir. 2005).

"[T]he elements of a [claim preclusion] defense are (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

The Court clearly based its judgment in the prior action on its assessment of the merits. In addition, the parties in the two actions are sufficiently identical for res judicata purposes. The defendants in the prior action, and Defendants herein, are Correct Care Solutions and some of its employees who provide medical care to inmates at the prison. Although Plaintiff included in the current action a new defendant, i.e., Nurse Practitioner Cindy McDonough, under the circumstances, the addition of a new defendant does not preclude application of res judicata. *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010) ("claim preclusion applies if the new defendant is 'closely related to a defendant from the original action—who was not named in the previous law suit,' not merely when the two defendants are in privity." (quoting *Negrón–Fuentes v. UPS Supply Chain Sol.*, 532 F.3d 1, 10 (1st Cir. 2008) (collecting cases)).

The remaining issue is whether the current action presents the same, or a "sufficiently identical," cause of action as the claim Plaintiff asserted in the prior action. "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,'

7

even if the issue recurs in the context of a different claim." *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. at 748–49).

In general, claim preclusion does not preclude litigation of events that occur after the date on which the plaintiff filed the prior complaint, assuming the prior claim was not amended to incorporate post-filing events. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). However, claim preclusion prevents litigation in a later action of matters that "grew out of the same nucleus of operative facts and should have been brought" in the prior action. *Aristud–González v. Government Development Bank for Puerto Rico (GDB)*, 501 F.3d 24, 27 (1st Cir. 2007) (citation and internal quotation marks omitted). Where a series of related transactions are in question, a court considering a claim preclusion defense must evaluate "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 38 (1st Cir.1998). The First Circuit explained:

> In most situations involving federal claims, it is now enough to trigger claim preclusion that the plaintiff's second claim grows out of the same transaction or set of related transactions as the previously decided claim. The implicit rationale is that for the sake of efficiency, all such claims should be brought together, if this is possible. In short, the res judicata doctrine functions not only in its traditional role of preventing repeat claims, but has become a compulsory joinder requirement for closely related claims.

*AVX Corp.*, 424 F.3d at 31 (citations omitted).

In the prior action, Plaintiff initially asserted a deliberate indifference claim based on the treatment of a hip condition. As the case progressed, Plaintiff supplemented his allegations to assert that his hip condition was the product of an underlying disease process that produced a constellation of symptoms, many of which allegedly arose after the date on which Plaintiff

8

filed the complaint in the prior action.[4] Plaintiff sought relief related to his additional symptoms. For instance, in a motion for injunctive relief in the prior action, Plaintiff alleged that he was "suffering from serious somatic symptoms that are indicative of a major health disorder and possible malignancy. Several disinterested prison and medical staff are able to corroborate the plaintiff's reports of specific symptoms of viable masses on the base of his skull, concerning fracture-like anomaly, and various instances of lymphadenopathy in axillary and cervical groups…" (ECF No. 370.) In his declaration in support of the motion for injunctive relief, Plaintiff described what he perceived to be a "3 – 4 inch fracture-like anomaly on the left side of [his] skull," and listed a number of symptoms he evidently believed were related. (ECF No. 370-1.) In both the recommended decision and the order on the motion for summary judgment in the prior action, the Court acknowledged Plaintiff's assertion that he suffered from serious medical conditions Defendants had not properly diagnosed or treated.

Given that Plaintiff seeks to recover in the current action for Defendants' alleged failure to treat one of the underlying conditions (i.e., an alleged anomaly in his skull), on which he presented evidence and for which he sought relief in his filings in the prior action, the claims asserted in the current action can fairly be characterized as the same claims he asserted in the prior action, or claims that should have been asserted in the prior action. *See*, *e.g.*, *Williams v. Kurk*, 730 F. App'x 516, 517 (9th Cir. 2018); *Wilson v. Wexford Health Sources, Inc.*, No. 8:15-cv-1448, 2016 WL 2347840, at *5 (D. Md. May 3, 2016). In other words, the claims are

---

[4] *See e.g.*, Plaintiff's filings and the Court's orders docketed in the prior action at ECF Nos. 447/481 (Motion re. New Evidence – x-ray radiology report), 472 ("Additional Evidence" – lab results, medical publication re. Cushing Syndrome), 489 ("Additional Evidence" – "fracture-like" anomalies.)

9

"sufficiently identical" as contemplated by the First Circuit in *In re Colonial Mortg. Bankers Corp*.

All of the required elements of res judicata, therefore, are satisfied.[5] Accordingly, the claims asserted by Plaintiff in his amended complaint are barred by the doctrine of res judicata.[6]

## Conclusion

Based on the foregoing analysis, Plaintiff's Motion to Amend (ECF No. 62) is granted. In addition, I recommend the Court grant Defendants' Motion to Dismiss (ECF No. 40), and dismiss Plaintiff's amended complaint. Defendants' Motion to Stay in the Alternative (ECF No. 67/71) is dismissed as moot.

## **NOTICE**

Any objection to this Recommended Decision and Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

With respect to the order on non-dispositive matters (i.e., the denial of the Objection to Removal), a party may serve and file objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(a).

With respect to the recommendations made herein, a party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. Section 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection. Fed. R. Civ. P. 72(b)(2). Failure to file a timely

---

[5] Plaintiff commenced the current action before the Court entered its judgment in the prior action. To the extent Plaintiff's amended complaint concerns matters that post-date the judgment, Plaintiff cannot proceed in an action he filed before he exhausted available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 105, 126 S. Ct. 2378, 2394, 165 L. Ed. 2d 368 (2006); 42 U.S.C. § 1997e(a).

[6] Because I concluded that Plaintiff's amended complaint is barred by the doctrine of res judicata, I have not addressed in this recommended decision Defendants' alternative argument that Plaintiff has not asserted a plausible claim for deliberate indifference.

objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 3rd day of October, 2018.