## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS A. GLADU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17-cv-00504-JAW |
| | ) | |
| CORRECT CARE SOLUTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AFFIRMING IN PART AND REJECTING IN PART THE RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS

The federal courts are not an appropriate forum for hypochondriacal inmates based on their symptoms alone to force prisons to seek out and obtain second medical opinions. At the same time, federal courts are not equipped without assistance from the medical profession to distinguish between the hypochondriac and the truly ill. To make this critical distinction, the Court must rely on the medical evidence.

In this case, based on the medical evidence before it, the Court dismisses without prejudice the medical defendants' motion to dismiss on two areas where the inmate alleged potentially serious medical conditions, claimed that some medical professionals recommended referral to specialists, and asserted that the medical professional defendants countermanded the referrals. Otherwise, the Court accepts the Magistrate Judge's recommended decision to dismiss the inmate's complaint as barred by principles of res judicata.

## I.    BACKGROUND

## A. Procedural History

On December 29, 2017, Nicholas A. Gladu, a state prisoner acting pro se, filed a complaint in this Court pursuant to 42 U.S.C. § 1983 against Correct Care Solutions, Robert Clinton, M.D., Cindy McDonough, nurse practitioner, and Wendy Riebe, health services administrator (CCS Defendants). *Compl.* (ECF No. 1). On April 16, 2018, the CCS Defendants moved to dismiss the complaint. *Mot. to Dismiss* (ECF No. 40) (*Defs.' Mot.*). After several filings concerning evidentiary issues, Mr. Gladu filed a motion for leave to file an amended complaint on June 11, 2018. *Mot. for Leave to File Am. Compl. and Supplemental Compl.* (ECF No. 62). That same day, Mr. Gladu opposed the CCS Defendants' motion to dismiss, *Resp. in Opp'n to Mot. to Dismiss* (ECF No. 64) (*Pl.'s Opp'n*), and on June 22, 2018, the CCS Defendants replied. *Reply to Resp. to Mot. to Dismiss* (ECF No. 67) (*Defs.' Reply*).

On October 3, 2018, the Magistrate Judge issued a recommended decision, granting the motion to amend the complaint and recommending that the complaint as amended be dismissed. *Order on Mot. to Amend and Recommended Decision on Mot. to Dismiss* (ECF No. 107). On October 12, 2018, Mr. Gladu objected to the recommended decision. *Pl.'s Obj. to Recommended Decision on Mot. to Dismiss* (ECF No. 110). On October 25, 2018, the CCS Defendants responded. *Defs. Correct Care Solutions, Robert Clinton, M.D., Cindy McDonough, N.P. and Wendy Riebe, H.S.A.'s Reply to Pl. Gladu's Obj. to the Report and Recommended Decision on the Mot. to Dismiss* (ECF No. 111).

Meanwhile, on June 26, 2018, the Magistrate Judge recommended that the Court deny Mr. Gladu's motions for physical examination. *Recommended Decision on Pl.'s Mots. for Physical Examination* (ECF No. 72). On July 5, 2018, Mr. Gladu objected to the Magistrate Judge's recommended decision. *Pl.'s Obj. to the Magistrate Judge's Recommended Decision* (ECF No. 77). On July 19, 2019, the CCS Defendants responded. *Defs. Correct Care Solutions, Robert Clinton, M.D., Cindy McDonough, N.P. and Wendy Riebe, H.S.A.'s Reply to Pl. Gladu's Obj. to the Report and Recommended Decision on the Mots. for Physical Examination* (ECF No. 83). On July 24, 2018, this Court affirmed the recommended decision and on July 25, 2018, this Court issued an amended order to the same effect. *Order Affirming Recommended Decision and Order* (ECF No. 84); *Amended Order Affirming Recommended Decision and Order* (ECF No. 85). On August 2, 2018, Mr. Gladu filed a notice of appeal of the Amended Order Affirming Recommended Decision and Order to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 90). During the pendency of the appeal, Mr. Gladu's objection to the recommended decision on the CCS Defendants' motion to dismiss was effectively stayed. On October 1, 2019, the Court of Appeals for the First Circuit issued a decision, affirming the Court's July 25, 2018 amended order, and on October 22, 2019, the First Circuit issued its mandate, thereby returning jurisdiction to this Court.

### B.  The Allegations in the Complaints

#### 1.  The Original Complaint Filed December 29, 2017

Mr. Gladu's original Complaint alleges that in April 2017, he noticed a "palpable fracture-like anom[a]ly which was approximately 3-4 inches long on the left side of his skull." *Compl.* ¶ 10. Mr. Gladu states that leading up to and following that date, he experienced "vision changes, visual disturbances, constant headache, vertigo, dizzy spells, tingling in his face and hands, skull pain and tenderness, shortness of breath, short-term memory problems, cognitive dysfunction, and more." *Id.* ¶ 23. Mr. Gladu declares that approximately four months later, the CCS Defendants referred him to a visiting optometrist, who told Mr. Gladu that "he suspected diabetes as a likely cause" of his vision issues, and "said that he was going to ask Ms. Riebe to have Plaintiffs' serum glucose levels monitored (3x per day for 30 days)" but that his glucose levels were only checked once or twice subsequently. *Id.* ¶¶ 24-28.

Mr. Gladu further states:

From September 2016 through December 2017, Plaintiff submitted numerous sick call complaints indicative of an underlying serious medical condition with unresolved symptoms (E.g.; chronic pain, repeated fevers of unknown origin, lymphadenopathy, fluid management issues, high susceptibility to infection, constant headache and pressure sensation, visual changes, visual disturbances, unexplained vertigo and shortness of breath, night sweats, repeated sinusitis, skull pain and tenderness, eustachian tube dysfunction, etc.).

*Id.* ¶ 29. He alleges that during this time, despite submitting numerous sick call complaints, "Plaintiff was continuously subject to unnecessary delay of access to medical care and treatment." *Id.* ¶ 30. He also states that "[f]rom October 2010 through December 2017, Plaintiff's labwork has consistently shown clinical signs of renal dysfunction. Renal dysfunction is common in metabolic bone disease." *Id.* ¶ 48.

Additionally, Mr. Gladu alleges that a November 2009 blood test revealed that "Plaintiff's Vitamin D level was at the absolute lowest limit permitted for the normal range," yet "the defendants and their agents have and continue to ignore Plaintiff's requests for updated testing of his Vitamin D . . . levels." *Id.* ¶¶ 42, 47.

## 2. The Amended Complaint Filed June 11, 2018

In the amended complaint Mr. Gladu filed on June 11, 2018, he included additional facts alleging that the Defendants failed to respond to his new symptoms. *Mot. for Leave to File Am. Compl. and Suppl. Compl.*, Attach. 1, *First Am. Compl.* ¶¶ 57-63 (ECF No. 62-1) (*Am. Compl.*). He states that from January 2017 to June 2018 he suffered from "unexplained hypertension," and that Defendants Clinton and McDonnough failed to follow up or monitor Mr. Gladu's response to the prescribed treatment of Propranolol. *Id.* ¶ 57. He also suffered from "notable chest pain that radiates to his left arm" beginning in May of 2018, but he "waited well over 5-7 days [for] each complaint to be triaged by a CCS nurse," and he has not been examined by a medical practitioner for this symptom. *Id.* ¶ 59. He further claims that, since March of 2018, he "has been suffering numerous black spots in his peripheral vision and [has had] bouts of double vision," which the optometrist at Maine State Prison felt warranted a referral to an outside ophthalmologist and medical imaging studies, but that "Defendant Clinton intervened and canceled the appointment in an effort to prevent Plaintiff's condition/symptoms form being documented by an unbiased physician . . .." *Id.* ¶¶ 60-61.

Mr. Gladu requests the Court declare that the CCS Defendants violated his Eighth Amendment right to medical care, issue an injunction requiring the CCS Defendants to provide "x-rays of Plaintiff's skull and any necessary follow-up care determined thereafter, including treatment by an outside specialist," and award compensatory and punitive damages.[1] *Id.* at 7.

The Magistrate Judge issued a recommended decision on October 3, 2018, granting Mr. Gladu's motion to amend and recommending that the Court grant the CCS Defendants' motion to dismiss. *Report and Recommended Decision re Mot. to Dismiss* (ECF No. 107) (*Recommended Decision*). On October 12, 2018, Mr. Gladu objected. *Obj. to Report and Recommended Decision* (ECF No. 110) (*Pl.'s Obj.*). The CCS Defendants responded to Mr. Gladu's objection on October 25, 2018. *Resp. to Obj. to Report and Recommended Decision* (ECF No. 111) (*Defs.' Resp. to Pl.'s Obj.*).

## II. THE PARTIES' POSITIONS

### A. The Defendants' Motion to Dismiss

The CCS Defendants argue that Mr. Gladu's Complaint is precluded by this Court's prior judgment. *Defs.' Mot.* at 2 (citing *Gladu v. Correct Care Solutions*, Docket No. 2:15-cv-00384-JAW (ECF No. 512) (D. Me. Dec. 18, 2017) (*Prior Action*). They argue that the current Complaint is made up entirely of claims that "were or

---

[1]      On September 23, 2015, Mr. Gladu filed a similar complaint with this Court, alleging that Correct Care Solutions, Dr. Clinton and Wendy Riebe, among others, failed to diagnose and treat his hip pain. *Gladu v. Correct Care Solutions*, No. 2:15-cv-00384-JAW, *Compl.* (ECF No. 1). On February 14 and 15, 2018, the Court affirmed a recommended decision and issued judgment in favor of the Defendants. *Id.*, *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 541); *J.* (ECF No. 542). Mr. Gladu filed a notice of appeal of this judgment to the Court of Appeals for the First Circuit, *id.*, *Notice of Appeal* (ECF No. 545). On August 30, 2019, the First Circuit affirmed the district court's judgment. *J.* (ECF No. 566).

could have been raised in that action." *Id*. at 1 (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). According to the CCS Defendants, Mr. Gladu's primary claim in the prior action was that they acted with deliberate indifference to his serious medical needs, in violation of the Eight Amendment. *Id*. at 2. Although Mr. Gladu's original complaint focused primarily on the CCS Defendants' mistreatment of his hip pain, and his current action alleges a "slightly different constellation of symptoms," the CCS Defendants contend that the factual predicates to the claims in both complaints make up a series of connected transactions that form a "common nucleus of operative facts." *Id*. at 7 (citing *Apparel Art Int'l v. Amertex Enters.*, 48 F.3d 576, 583-84 (1st Cir. 1995)). The CCS Defendants further argue that "the fact that certain alleged evidentiary support for that claim arose after the filing of the original complaint does not change the nature of the claim," because "the Court did consider much of this evidence in addressing Mr. Gladu's claim in the original proceeding that he suffered from a different serious underlying medical condition." *Id*. at 10 & n.3.

Specifically, the CCS Defendants note that following his original complaint in the prior action, Mr. Gladu filed evidence of blood work panels and a declaration in which he provided a revised list of symptoms asserting he believes he is suffering from Cushing Syndrome. *Id*. at 11 (citing *Prior Action*, *Mot. to Add New Evid. to the Record*, Attach. 1, *Lab Report* (ECF No. 463); *Prior Action*, Attach. 2, *Copy of a Letter and Decl. of Nicholas A. Gladu*, (ECF No. 463)). Mr. Gladu also alleged in a separate declaration that he attributed a "skull anomaly" to Cushing Syndrome. *Id*. (citing *Prior Action*, *Declaration*, (ECF No. 473) (*Decl. in Prior Action*)). This additional

evidence was weighed by the Magistrate Judge in his recommended decision on the CCS Defendants' motion for summary judgment. *Id.* (citing *Prior Action, Report and Recommended Decision re Mot. for Summary J.* (ECF No. 512)).

The CCS Defendants contend that the fact that Mr. Gladu included Cindy McDonough as a defendant in this action, when she was not a party to the previous action, does not prevent the Court from dismissing the present action under the doctrine of claim preclusion because the "two causes of action involve parties who 'are sufficiently identical or closely related.'" *Id.* at 12 (citing *Airframe Sys. v. Raytheon Co.,* 601 F.3d 9, 14 (1st Cir. 2010)). Here, the CCS Defendants argue, Ms. McDonough, as a health care provider for CCS, "is closely related to the parties in the original cause of action." *Id.* at 13.

In the alternative, the CCS Defendants argue that Mr. Gladu's Complaint should be dismissed for failure to state a claim. They contend that Mr. Gladu has failed to "assert 'acts or omissions sufficiently harmful to evidence deliberate indifference,'" *id.* at 15 (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1994)), and that there is no evidence of deliberate indifference on the part of the Defendants in treating Mr. Gladu. *Id.* at 16. The CCS Defendants cite *Davis v. Gusman*, No. 09-7195, 2010 U.S. Dist. LEXIS 41550, at *49 (E.D. La. Apr. 13, 2010), as support for their position that "[m]ere delay in receiving care is not in and of itself a constitutional violation." *Id.* at 17.

B.     **The Plaintiff's Opposition**

Mr. Gladu opposes the motion, arguing that the CCS Defendants' contention that the earlier case and the current case arise from the same set of facts is incorrect. *Pl.'s Opp'n* at 1. He says that "[e]ven if there is some factual overlap – res judicata will not apply." *Id*. (citing *Baker Group L.C. v. Burlington N. & Sante Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir. 2000); *Thomas v. Evans*, 880 F.2d 1235, 1240-41 (11th Cir. 1989) (citation altered in ordering)). Mr. Gladu contends that the first cause of action alleged deliberate indifference to serious medical needs for hip and back pain, while "the current case alleges deliberate indifference to serious medical needs for skull fractures, eye complaints, neurologic symptoms, and more." *Id*. He further argues that most of the symptoms he alleges in the present action "occurred well after the filing of that earlier case." *Id*. Mr. Gladu says "[i]f Plaintiff was subjected to subsequent medical mistreatment, he should be able to bring two lawsuits even if the same parties are involved." *Id*.

In response to the CCS Defendants' alternative argument that Mr. Gladu failed to state a claim, he argues that he has "stated facts that would permit a lay person to conclude that his medical problems were serious." *Id*. at 2. He also avers that the CCS Defendants "rely on many irrelevant citations to advance such defense." *Id*.

Finally, Mr. Gladu states that the Court must ignore the materials submitted by the CCS Defendants outside the Complaint or convert the motion into a motion for summary judgment. *Id*. at 2 (citing Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

## III.   THE RECOMMENDED DECISION

In his recommended decision, the Magistrate Judge granted Mr. Gladu's motion to amend his Complaint, and recommended the Court grant the CCS Defendants' motion to dismiss. *Recommended Decision* at 2. The Magistrate Judge compared the complaints in the prior and current actions.

### A.   Complaint in the Prior Action

In describing the prior complaint, the Magistrate Judge stated: "[i]n an amended complaint filed on December 5, 2016, Plaintiff describes a history of chronic pain in the hip region and his inability to obtain relief despite numerous palliative approaches taken by staff of Defendant Correct Care Solutions." *Id.* (citing *Prior Action*, *Compl.*). The Magistrate Judge noted that Mr. Gladu alleged a skull anomaly in April 2017, which the Magistrate Judge addressed in his recommended decision on Mr. Gladu's motion for a temporary restraining order and preliminary injunction, which this Court affirmed. *Recommended Decision* at 4 (citing *Prior Action, Recommended Decision on Mot. for Temporary Restraining Order and Prelim. Inj. at 4-5* (ECF No. 405)). The Magistrate Judge concluded that after the examination, which included a neurological exam and an assessment of Plaintiff's complaint about his skull, a physician determined that Plaintiff did not suffer from a serious head-related condition and that no imaging of Plaintiff's head was necessary." *Id.*

The Magistrate Judge further noted that in his recommended decision on the motions for summary judgment in the prior action, he outlined the litany of symptoms cited as evidence of Mr. Gladu's belief that he has "a serious underlying medical

condition, such as non-Hodgkin lymphoma, chronic eosinophilic leukemia, myeloproliferative disorders, autoimmune disease, or a systemic infection." *Recommended Decision* at 3 (*citing Prior Action, Recommended Decision on Mots. for Summary J.* at 18 (ECF No. 512)). He stated that "[m]ore recently, Plaintiff appears to advance a different explanation for some of his symptoms. . . . Based on blood work panels reported in 2009, and a new declaration in which he provides a revised list of his symptoms, Plaintiff asserts that he believes he is suffering from Cushing Disease." *Id.* The Magistrate Judge recommended granting summary judgment in favor of the CCS Defendants, which this Court affirmed, concluding that according to the evidence, "the CCS medical professionals have been attentive to Mr. Gladu, have arrived at a diagnosis that has been confirmed by an outside specialist, and have generally agreed on the proper treatment. Mr. Gladu has failed on this record to demonstrate deliberate indifference on the part of CCS." *Prior Action*, *Order Adopting Report and Recommended Decision for Mot. for Summary J.* at 14-15 (ECF No. 541).

## B.     Complaint in the Current Action

The Magistrate Judge states that in the current action filed on December 29, 2017, Mr. Gladu alleges that in April 2017 he developed a skull anomaly, and that he has experienced "various symptoms, including vision problems, headaches, vertigo, facial tingling, hand tingling, shortness of breath, skull pain, and cognitive dysfunction," as well as low levels of Vitamin D and a "decreased alkaline phosphatase serum level" which he believes are symptoms of an "underlying serious

medical condition," likely metabolic bone disease. *Recommended Decision* at 4 (citing *Compl.* ¶¶ 10, 23, 29). He alleges additional symptoms in his Amended Complaint, including "unexplained hypertension that is unresponsive to first-round treatment measures," chest pain, and further vision changes. *Id.* at 5 (citing *Am. Compl.* ¶¶ 57-60).

## C.    The Magistrate Judge's Analysis

The Magistrate Judge analyzed the three elements of claim preclusion as applied to the two Complaints, concluding that "[t]he Court clearly based its judgment in the prior action on the assessment of the merits," and the "parties in the two actions are sufficiently identical for res judicata purposes," because the Defendants in the prior action and the Defendants in the current action are all CCS employees providing medical care to inmates at the prison. *Id.* at 7. In evaluating the third element—whether there is sufficient identicality between the causes of action asserted in the earlier and later suits—the Magistrate Judge concluded:

> Given that Plaintiff seeks to recover in the current action for Defendants' alleged failure to treat one of the underlying conditions (i.e. an alleged anomaly in his skull), on which he presented evidence and for which he sought relief in his filings in the prior action, the claims asserted in the current action can fairly be characterized as the same claims he asserted in the prior action, or claims that should have been asserted in the prior action.

*Id.* at 9.

## IV.    THE OBJECTION AND RESPONSE

### A.    Nicholas Gladu's Objection

Mr. Gladu objects to the Recommended Decision, arguing that "the doctrine of res judicata does not apply to the set of facts and claims in the herein current matter." *Pl.'s Obj.* at 1. He incorporates by reference his arguments in his opposition to the Defendants' motion to dismiss. *Id.*

## B. CCS Response to Nicholas Gladu's Objection

In response, the CCS Defendants argue that Mr. Gladu's objection "simply reiterates in cursory fashion the one argument he previously raised in his Brief in Opposition to the Defendants' Motion to Dismiss and Motion to Consolidate . . .." *Defs.' Resp. to Pl.'s Obj.* at 2. According to CCS, the lack of a specific objection on the part of the Plaintiff means that he has "waived his right to de novo review by this Court of those portions of the decision to which he has not specifically objected." *Id.*

## V. DISCUSSION

### A. Claim Preclusion

#### 1. Legal Standard

##### a. Rule 12(b)(6)

Rule 12(b)(6) provides, in part:

> Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . ..

FED. R. CIV. P. 12(b)(6). "In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alt. Energy, Inc. v. St. Paul Fire &*

*Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001) (citing *Beddall v. State St. Bank & Tr. Co.,* 137 F.3d 12, 16 (1st Cir. 1998)). A defendant is entitled to dismissal only if it "appears to a certainty that the plaintiff would be unable to recover under any set of facts." *State St. Bank & Tr. Co. v. Denman Tire Corp.,* 240 F.3d 83, 87 (1st Cir. 2001) (quoting *Roma Constr. Co. v. A Russo,* 96 F.3d 566, 569 (1st Cir. 1996)); *see also Nethersole v. Bulger,* 287 F.3d 15, 18 (1st Cir. 2002).

Ordinarily, when a court reviews a motion to dismiss, it may not consider documents outside the complaint. *Alt. Energy,* 267 F.3d at 33. An exception exists, however, for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.*; *see also Beddall,* 137 F.3d at 16. Here, the Defendants attached motions and orders from the prior action to their motion to dismiss, the authenticity of which Mr. Gladu has not contested. *See Defs.' Mot.*, Attach. 1, *Ex. A.* (ECF No. 40-1); *id.*, Attach. 2, *Ex. B* (ECF No. 40-2); *id.,* Attach. 3, *Ex. C* (ECF No. 40-3); *id.,* Attach. 4, *Ex. D* (ECF No. 40-4); *id.,* Attach. 5, *Ex. E* (ECF No. 40-5); *id.,* Attach 6, *Ex. F* (ECF No. 40-6). In accordance with First Circuit precedent, in ruling on the motion to dismiss, both the Magistrate Judge and this Court have considered the prior court documents and orders for the purposes of res judicata.

### b.     Doctrine of Claim Preclusion

In *Taylor v. Sturgell*, the Supreme Court explained that "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are

collectively referred to as res judicata." 553 U.S. 880, 892 (2008). The affirmative defense of claim preclusion serves to "protect[] litigants against gamesmanship and the added litigation costs of claim-splitting, and prevent[] scarce judicial resources from being squandered in unnecessary litigation, . . . [and ensure] plaintiffs cannot obtain a second chance at a different outcome by bringing related claims against closely related defendants at a later date." *Airframe Sys., Inc.,* 601 F.3d at 14. "The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits." *Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 30 (1st Cir. 1994); *Animal Welfare Inst. v. Martin*, 588 F. Supp. 2d 70, 89 (D. Me. 2008). "Federal claim preclusion law applies to determine the preclusive effect to be given a prior federal court judgment." *Airframe Sys., Inc.*, 601 F.3d at 14.

The First Circuit "uses a transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes." *Id.* This inquiry "boils down to whether the causes of action arose out of a common nucleus of operative facts," *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n,* 142 F.3d 26, 38 (1st Cir. 1998), which is determined by considering "factors such as 'whether the facts are related in time, space, origin or motivation,' 'whether they form a convenient trial unit,' and whether treating them as a unit 'conforms to the parties' expectations.'" *Airframe Sys.,* 601 F.3d at 15 (citing *In re Iannochino,* 242 F.3d 36, 46 (1st Cir. 2001) (quoting *Restatement (Second) of Judgments* § 24 (Am. Law Inst. 1982)).

### c.    Pro Se Litigants

Courts are generally more relaxed about compliance with procedural rules when a litigant is acting pro se. "The Supreme Court has long held that complaints drafted by non-lawyers are to be construed with some liberality." *Insituto de Educacion Universal Corp. v. U.S. Dep't of Educ.,* 209 F.3d 18, 23 (1st Cir. 2000) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). Even so, the First Circuit has written that "pro se status does not free a litigant in a civil case of the obligation to comply with procedural rules." *Rivera v. Riley*, 209 F.3d 24, 28 n.2 (1st Cir. 2000), *abrogated on other grounds by de Aza-Paez v. United States*, 343 F.3d 552 (1st Cir. 2003).

### 2.    Analysis

The Magistrate Judge concluded that the first two elements of claim preclusion, identity of parties and a judgment final in nature, are met in this case, and the Court agrees. The Court provides additional analysis regarding the final element: whether the causes of action in both suits are sufficiently identical or related to render the current claim barred. The Court views Mr. Gladu's original Complaint as alleging one count of deliberate indifference in violation of the Eighth Amendment, based on Mr. Gladu's statement that the Defendants misdiagnosed and failed to adequately treat the "skull anomaly" he discovered in April 2017. *Compl.* ¶ 10.

Mr. Gladu has not separated his allegations into different counts; however, for the sake of organizing an otherwise undifferentiated pleading, the Court interprets Mr. Gladu's June 2018 Amended Complaint as alleging three additional counts:

**Count Two**: Mr. Gladu has suffered from unexplained hypertension from January 2017 to June 2018, which was being treated with

Propranolol, but Defendants "failed to follow up and/or monitor Plaintiff's response to that treatment" and further requests for follow-up have gone unanswered.

**Count Three**: Mr. Gladu has experienced chest pain since May of 2018, but he has yet to be examined by a medical provider despite numerous complaints.

**Count Four**: Mr. Gladu states he has suffered from black spots in his vision and double vision since March of 2018 but that Dr. Clinton intervened and canceled an outside referral made by the optometrist at Maine State Prison, and Mr. Gladu's subsequent complaints have gone unanswered.

*Am. Compl.* ¶¶ 57-60.

### a. Deliberate Indifference Claim

The Magistrate Judge concluded, with respect to Mr. Gladu's count of deliberate indifference in treatment of the skull anomaly he discovered in April 2017, that Mr. Gladu alleged the same fact regarding his April 2017 discovery of an skull anomaly in the prior action, and that in response, "the Court acknowledged Plaintiff's assertion" in both the recommended decision and in the order on the motion for summary judgment. *Recommended Decision* at 9. The Magistrate Judge concluded that the two claims are sufficiently identical to be precluded. *Id.* Because the exact fact was admitted and considered by this Court in Mr. Gladu's claim of deliberate indifference in the prior action, the Court agrees that the two counts are sufficiently "related in time, space, origin and motivation" to preclude the current claim. The Court dismisses Count One of Mr. Gladu's claim of deliberate indifference as to the CCS Defendants' failure to adequately treat his cranial anomaly.

Count Two of Mr. Gladu's Amended Complaint alleges that the CCS Defendants failed to follow up or monitor Mr. Gladu's hypertension, which he states has been a symptom from January 2017 to June 2018. *Am. Compl.* ¶ 57. He alleges that the first line treatment of Propranolol failed to reduce his blood pressure but that the CCS Defendants failed to follow up or monitor his response. *Id.*

In his prior action in a declaration he submitted to the Court in April 2017, Mr. Gladu also alleged "[n]otable and unexplained" hypertension in support of his claim that he suffered "from a serious undiagnosed underlying medical condition" and was "denied necessary medical care and treatment by the Defendants," for which he sought a temporary restraining order and a preliminary injunction. *Prior Action*, *Mot. for Temporary Restraining Order, Mot. for Prelim. Inj.*, Attach. 1, *Decl. of Nicholas Gladu* (ECF No. 370-1). The Magistrate Judge recommended that the Court deny Mr. Gladu's motion, *Prior Action*, *Report and Recommended Decision re Mot. for Temporary restraining Order, Mot. for Prelim. Inj.* (ECF No. 405), which this Court affirmed. *Prior Action*, *Order Adopting Report and Recommended Decision for Mot. for TRO and Mot. for Prelim. Inj.* (ECF No. 415). Because the same fact was alleged in support of an identical claim in the previous action, the Court finds that Count Two is precluded.

Mr. Gladu next alleges what the Court considers Count Three of his Amended Complaint: Defendants' deliberate indifference to his severe chest pain, which he has suffered from since May 2018. *Am. Compl.* ¶ 59. Chest pain was not alleged in the prior action, and the onset of the symptom took place three months after final

judgment issued in the previous case, and the CCS Defendants' failure to respond took place after that. *Id*. The Court, therefore, cannot conclude that Mr. Gladu should have alleged this count in his prior action, or that Count Three is so related in time, space, origin, or motivation to the prior action to render it barred under claim preclusion. The Court finds that Mr. Gladu's claim of medical mistreatment by the CCS Defendants with regard to his chest pain is not precluded by the prior action.

Mr. Gladu's Count Four allegations concern "vision changes [and] visual disturbances." *Id.* ¶ 60. His vision allegations first appear in paragraphs twenty-three through twenty-eight of the Amended Complaint:

> 23. Plaintiff's sick call complaints up to (and continuing thereafter) said provider appointment consisted of symptoms such as: vision changes, visual disturbances, constant headaches, vertigo, dizzy spells, tingling in his face and hands, skull pain and tenderness, shortness of breath, short-term memory problems, cognitive dysfunction, and more.

> 24. Defendants McDonough and Riebe stated that they would only agree to have Plaintiff examined by the visiting optometrist. Which referral took another nearly 4 months to complete.

> 25. CCS at MMC only had an optometrist visit once every 2 or more weeks to the facility. As a result, excessive delay for such care is very common.

> 26. Upon information and belief, CCS has its contracted optometrist visit MMC so infrequently in order to drastically cut costs for inmate healthcare. CCS bases the decisions of its healthcare services on expense, rather than actual needs of the inmate population at MMC.

> 27. CCS's optometrist confirmed Plaintiff's vision changes via an eye examination. The optometrist told Plaintiff that he suspected diabetes as a likely cause (based on exam findings and review of labwork) and said that he was going to ask Ms. Riebe to have Plaintiff's serum glucose levels monitored (3x per day for 30 days).

> 28. Plaintiff's blood sugar was only checked once or twice thereafter.

*Am. Compl.* ¶¶ 23-28.

Later in paragraphs sixty through sixty-three, Mr. Gladu alleges:

60. Since March of 2018, Plaintiff has been suffering numerous black spots in his peripheral vision and bouts of double vision. In April of 2018, the eye doctor at Maine State Prison felt that it was necessary to have Plaintiff evaluated by an outside ophthalmologist and also undergo medical imaging studies. This referral was discussed with Plaintiff in the presence of correctional sergeant and correctional officer.

61. Upon information and belief, upon learning of said ophthalmology referral Defendant Clinton intervened and cancelled the appointment in an effort to prevent Plaintiff's condition/symptoms from being documented by an unbiased physician and to presumably conceal the true extent of Plaintiff's health.

62. Plaintiff's eye complaints have steadily worsened and his sick call slips concerning those issues are now going entirely unanswered.

63. Plaintiff specifically alleges that the aforementioned denial and delay of necessary medical care and treatment have caused him continued pain and suffering as well as permanent damage to his health.

*Id.* ¶¶ 60-63.

Although Mr. Gladu does not expressly allege when the optometrist visit occurred, the Court infers that it took place around April 2017 because these allegations appear in Mr. Gladu's original Complaint in this case, which he filed with the Court on December 29, 2017, and the allegations follow his April 2017 complaints about his skull fracture. In the Court's view, Mr. Gladu's complaints about his vision problems arising from the spring of 2017 are barred. The essence of his 2015 complaint, which included treatment (or lack of treatment) of his alleged skull fracture in the spring of 2017 was that CCS had failed to properly respond to his complaints. Those complaints included, as noted earlier, vision issues that Mr. Gladu

thought were related to his skull fracture, and the Court therefore concludes that Mr. Gladu may not now raise again CCS's treatment of his spring 2017 complaints. Otherwise, Mr. Gladu could isolate out each symptom or condition within an overall claim of inadequate care and file separate lawsuits on each of them.

The allegations of vision problems in March and April of 2018 are different. Those allegations are not barred by the disposition of the 2015 Complaint because they involve events that took place after February 15, 2018, when the Court issued a judgment on the 2015 Complaint. In the Court's view, these allegations are not barred by claim preclusion.

At the same time, in Count Four, Mr. Gladu makes allegations against only Robert Clinton, M.D. A fair reading of his allegations includes CCS, but in Count Four, he makes no allegations against either Cindy McDonough or Wendy Riebe and the Court will affirm the recommended decision on Count Four for each of those Defendants.

In summary, the Court finds that his claim of deliberate indifference by CCS and Dr. Clinton in violation of the Eighth Amendment with regard to his vision problems is not barred by the doctrine of claim preclusion.

Finally, Mr. Gladu contends in Count Four of his Amended Complaint that he has experienced "vision changes [and] visual disturbances" up to and following an appointment on or around April 2018, resulting in multiple sick call complaints. *Id.* ¶ 60. As a result of these vision problems, he alleges that he was examined by the visiting optometrist, who suggested that Mr. Gladu's vision problems were caused by

diabetes, and the optometrist said that he would ask Defendant Riebe to monitor his blood sugar, but she only checked it once or twice. *Id.* ¶¶ 23-27. In his Amended Complaint, Mr. Gladu stated that "the eye doctor at Maine State Prison felt that it was necessary to have Plaintiff evaluated by an outside ophthalmologist and also undergo medical imaging studies." *Id.* ¶ 60. He contends that at some time after his appointment, "Defendant Clinton intervened and canceled the [outside] appointment in an effort to prevent Plaintiff's condition/symptoms from being documented by an unbiased physician and to presumably conceal the true extent of Plaintiff's health." *Id.* ¶ 61. He states that his complaints of worsening eye symptoms "are now going entirely unanswered." *Id.* ¶ 62. He alleges these facts constitute a claim for deliberate indifference in violation of the Eighth Amendment. *Id.* at 7.

Mr. Gladu's vision problems, for which Mr. Gladu was seen by the optometrist at the prison in April 2018, arose well before he filed new evidence and an accompanying declaration detailing a litany of additional symptoms in the prior action. *Prior Action*; *Additional Evid. by Nicholas A. Gladu* (ECF No. 472); *id.*, *Decl. in Prior Action*. However, he alleges that since April 2018, Defendant Clinton has interfered to cancel his external appointment. *Am. Compl.* ¶ 61. Mr. Gladu could not have alleged this fact in support of his claim in the prior action because it happened after final judgment in that action. Therefore, the Court finds that his claim of deliberate indifference by the CCS Defendants in violation of the Eighth Amendment with regard to his vision problems is not barred by the doctrine of claim preclusion.

## B.     Failure to State a Claim of Deliberate Indifference

The CCS Defendants alternatively argue that Mr. Gladu's Complaint "fails to state a claim for which relief may be granted for any claims that are not barred by the doctrine of res judicata." *Defs.' Mot.* at 14. Accordingly, the Court will analyze this argument for the remaining Counts Three and Four.

### 1.     Legal Standard

The Eighth Amendment "proscribes more than physically barbarous punishments"; it "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle*, 429 U.S. at 102 (citations omitted). Because "[a]n inmate must rely on prison authorities to treat his medical needs," the Amendment "establish[es] the government's obligation to provide medical care for those to whom it is punishing by incarceration." *Id*. at 103. "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id*. at 104-105 (internal citations and quotation marks omitted). However, the Supreme Court in *Estelle* made clear that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 106. Nor does "inadvertent failure to provide adequate medical care" constitute deliberate indifference to serious medical needs. *Id*. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*.

There are two prongs a plaintiff must meet to hold a prison official liable under the Eighth Amendment. First, the deprivation alleged must be, objectively,

"sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). "Second, the defendant must have a culpable state of mind, which means in prison conditions cases, that the defendant was deliberately indifferent to the inmate's health or safety," or "consciously disregarded a substantial risk of serious harm." *Pelletier v. Magnusson*, 195 F. Supp. 2d 214, 231 (D. Me. 2002) (quoting *Farmer*, 511 U.S. at 839-40). The required mental state has been described by the First Circuit as "recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable," and "may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care." *DesRosiers,* 949 F.2d at 19 (citing *Wilson v. Seiter,* 501 U.S. 2321, 2324-26 (1991); *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir. 1991); *Estelle*, 429 U.S. at 104-05).

### 2.   Analysis

Count Three of the Amended Complaint alleges that the CCS Defendants were deliberately indifferent to Mr. Gladu's serious medical need by failing to examine him for ongoing chest pain. He states that his complaint was "triaged by a CCS nurse" in a time frame of 5-7 days for each of his complaints, but that he "has yet to be examined by a medical practitioner . . . despite being referred three separate times." *Am. Compl.* ¶ 59. Taking all reasonable inferences in favor of Mr. Gladu, this count of the Complaint alleges facts that may satisfy the elements of an Eighth Amendment violation.

First, Mr. Gladu alleges that he suffered from "notable chest pain that radiates to his left arm" that continued untreated for several weeks. *Id*. "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990). Here, Mr. Gladu's complaint was evaluated by at least one triage nurse, who referred Mr. Gladu to the prison physician for examination. Although he was not diagnosed by a physician as requiring treatment, he was referred to a physician by another medical professional. This weighs in favor of his chest pain constituting a serious medical need. Furthermore, a layperson is highly likely to recognize the need for medical attention when a person complains of severe, radiating chest pain, because this symptom is a well-known sign of a heart attack or underlying cardiac condition.

More information is needed to determine whether the CCS Defendants consciously disregarded a substantial risk of serious harm in failing to examine him for his chest pain. Mr. Gladu alleges that his multiple complaints over a period of several weeks led to a triage nurse's referral of Mr. Gladu to the prison physician for examination. "[I]ndifference . . . manifested by prison doctors in their response to prisoner's needs" can constitute "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104. Therefore, Mr. Gladu's allegation that he was not examined by a physician for a serious medical need despite multiple nurse referrals is enough to satisfy the elements of deliberate indifference

for the purposes of the well-pleaded complaint rule. The Court denies the Defendants' motion to dismiss as to Count Three of the Amended Complaint.

In Count Four of his Amended Complaint, Mr. Gladu alleges that he has suffered disturbances to his vision since March of 2018. *Am. Compl.* ¶ 60. He was evaluated by the optometrist at the prison in April of 2018, who recommended that Mr. Gladu be referred to an outside ophthalmologist and that he also receive medical imaging. *Id.* However, Mr. Gladu claims that Dr. Clinton, Regional Medical Director for CCS, canceled the appointment to prevent Mr. Gladu's symptoms from being evaluated by an unbiased physician, and to "conceal the true extent" of Mr. Gladu's health issues. *Id.* ¶¶ 5, 61. As a result, Mr. Gladu states that his eye symptoms are worsening, and that his subsequent complaints "are going entirely unanswered." *Id.* ¶ 62.

Mr. Gladu's claim of worsening visual problems, including black spots in his peripheral vision and double vision, may meet the objective prong of a "serious medical need." A serious medical need is "one that is so obvious that even a lay person would recognize the necessity for a doctor's attention. Even a significant risk of future harm may suffice." *Perry v. Roy*, 782 F.3d 73, 79 (1st Cir. 2015) (citations omitted). Taking all reasonable inferences in favor of Mr. Gladu, the Court cannot conclude that Mr. Gladu can prove no set of facts that support his claim that his vision problems constitute a serious medical need.

Mr. Gladu alleges that Dr. Clinton canceled his referral with an outside ophthalmologist to conceal Mr. Gladu's health problems from an unbiased medical

provider. *Am. Compl.* ¶ 61. Taken as true, this claim aligns closely with "[t]he typical example of a case of deliberate indifference[,] . . . one in which treatment is denied in order to punish the inmate." *Watson,* 984 F.2d at 540 (internal quotations omitted). In sum, the Court finds that Mr. Gladu has alleged deliberate indifference to a serious medical need sufficiently on Count Four to require inquiry into the facts of his claim. The Court, therefore, denies the Defendants' motion to dismiss as to Count Four of the Amended Complaint.

### 3. The Hypochondriac Prisoner

There is more than just a suggestion in this case and in Mr. Gladu's 2015 federal case that Mr. Gladu is a hypochondriac. His laundry list of symptoms, his references to medical texts and alleged diagnoses, his assertions that he knows better than the medical professionals, his insistence that he must direct his own medical care, and his repeated resort to federal court, all make the Court wonder whether Mr. Gladu is simply obsessed about his body and perceived symptoms.

Federal court is not a proper forum for hypochondriacal inmates to obtain second opinions. The court system cannot allow Mr. Gladu to file a federal lawsuit every time he perceives a symptom and arrives at his own diagnosis and treatment plan, only to find that the prison medical professionals do not agree with him. What differentiates the heart condition and vision problem issues is that Mr. Gladu has alleged that medical professionals did authorize referrals to specialists for what could be serious medical conditions and that the Defendants nevertheless denied the

referrals. This is enough, from the Court's perspective, at least to require an explanation from the Defendants.

## VI.  CONCLUSION

The Court AFFIRMS IN PART and REJECTS IN PART the Recommended Decision of the Magistrate Judge (ECF No. 107).

The Court GRANTS the Motion to Dismiss (ECF No. 40) by Defendants Correct Care Solutions, Robert Clinton, M.D., Cindy McDonough, N.P., and Wendy Reibe:

1) Count I, Deliberate Indifference of Serious Medical Need as to Skull Anomaly;

2) Count II, Deliberate Indifference of Serious Medical Need as to Hypertension.

The Court GRANTS the Motion to Dismiss (ECF No. 40) as to Defendants Cindy McDonough, N.P., and Wendy Reibe; the Court DISMISSES without prejudice the Motion to Dismiss (ECF No. 40) as to Defendants Correct Care Solutions and Robert Clinton, M.D.:

3) Count III, Deliberate Indifference of Serious Medical Need as to Chest Pain.

The Court DISMISSES without prejudice the Motion to Dismiss (ECF No. 40), by Defendants Correct Care Solutions, Robert Clinton, M.D., Cindy McDonough, N.P., and Wendy Reibe:

1) Count IV, Deliberate Indifference of Serious Medical Need as to Vision Problems.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of October, 2019